IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.                                                       Case No. 2:16cr23-002

DENZELL ALEXANDER JOHNSON,

                   Defendant.

**POSITION OF THE DEFENDANT WITH RESPECT
TO SENTENCING FACTORS**

      COMES NOW the Defendant, Denzell Alexander Johnson, by counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the <u>Sentencing Guidelines and Policy Statements</u> as well as this Court's sentencing Order, and hereby represents that the Defendant has reviewed the Probation Office's Pre-Sentence Report and that he has one objection[1] to the report – which has been resolved between the parties - and states his position with respect to sentencing factors.

**OBJECTION**

      The defense objects to the two level enhancement applied by the probation officer for maintaining a premises for the purpose of manufacturing or distributing a controlled substance pursuant to U.S.S.G. § 2D1.1(b)(12). *See* PSR ¶ 20. The defense submits that this enhancement does not apply to Mr. Johnson. The Government agrees that this enhancement should not be applied to Mr. Johnson's guidelines. Without this enhancement, the advisory guideline range is 30 to 37 months (Offense Level = 19, CHC = I).

---

[1] The defense previously noted objections to the drug quantity and not receiving a minor role reduction to the probation officer but those objections are not being pursued and are withdrawn in exchange for the Government's agreement with the defense that the two level enhancement for "maintaining a drug premises" does not apply to Mr. Johnson.

# THE APPROPRIATE SENTENCE IN THIS CASE

## THE SENTENCE REQUESTED

Mr. Johnson is before this Court for sentencing after pleading guilty before Magistrate Judge Leonard on May 17, 2016 to Count One of a Criminal Information charging him with Possess with Intent to Distribute 50 Grams or More of Marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Sentencing is set for October 13, 2016 at 11:00 a.m.

For the reasons set forth herein, Mr. Johnson respectfully asks this Court to impose a sentence of probation. In sum, he is a 23 year old man with an extremely limited criminal history who fell under the influence of older family members who involved him in marijuana trafficking. Mr. Johnson is a father to two young children who is hard working and has already suffered from considerable embarrassment due to his actions bringing about this matter. The embarrassment and punishment he has imposed on himself, combined with other collateral consequences that will result as a consequence of his poor decisions, is substantial punishment. A sentence of probation is sufficient punishment and more than satisfies the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

## Nature and Circumstances of the Offense

The offense is Possess with Intent to Distribute 50 Kilograms or More of Marijuana. The "offense conduct" section of the Presentence Report ("PSR") and the Statement of Facts sets forth the facts and circumstances of the offense and Mr. Johnson's activities. Essentially over a brief period of time, Mr. Johnson became aware of his uncle Troy Johnson and relative Fernando Copeland's involvement in the trafficking of marijuana. These men are considerably older than Mr. Johnson and used their status as "family" to involve him in their illegal activities albeit on a limited basis.

Mr. Johnson was not aware of the scope of Troy Johnson's and Fernando Copeland's drug trafficking activities and did not by any means share in the proceeds they received. Mr. Johnson never went to Arizona to obtain marijuana nor did he ever transport marijuana or cash for its purchase. Mr. Johnson was never involved in any acts of violence or intimidation.

Mr. Johnson was caught helping his uncle and Mr. Copeland load several duffel bags of marijuana into Mr. Copeland's car on September 14, 2015. This amounted to about 136 kilograms of marijuana. Mr. Johnson was not aware of the specific amount but knew it was marijuana intended to be distributed. Mr. Johnson was arrested and charged with transport marijuana with intent to distribute and possession with intent to distribute marijuana in the Chesapeake General District Court. He was held without bond until released on January 13, 2016 after the state charges were nolle prossed and this federal prosecution commenced.

Mr. Johnson's time in the Chesapeake Jail compounded by this federal prosecution has made a lasting impression on him. He knows he was wrong for involving himself in the offense and is determined to never again violate the law. He has accepted responsibility for his actions and looks forward to closing this unfortunate chapter of his young life.

## History and Characteristics of Denzell Johnson

Denzell Johnson is a 23-year-old father to a daughter, age 3, and a son, 9 months old, who have added more love to his life than he thought possible. He has a mother, Beverly Johnson, who is a "proud mom to say he's my son." Denzell grew up knowing his father, Ronnie Johnson, as a man who could not care enough for him to avoid physically harming and abandoning him. Denzell has eight siblings between his mother and biological father and is extremely close to his maternal siblings.

Denzell grew up in Chesapeake, Virginia and experienced a childhood mixed with happiness and tragedy. When he was around the age of 7 or 8, Denzell's very own, biological father molested him on multiple occasions. Perhaps there is nothing more confusing to a child than the mixed message of understanding a parent both as an unconditional giver of love and a person who knowingly and repeatedly physically hurts you and breaks your heart. Likely due to the love and support from his mother, who saw that Denzell received counseling for this abuse, Denzell was able to experience a childhood where he could play, explore, and otherwise enjoy the gift of youth. He loved sports and was active in league activities through recreational leagues and school.

Navigating a diagnosis of Attention Deficit Hyperactivity Disorder while in the 7th grade, Denzell propelled himself through school with the use of the prescription drugs Zoloft and Adderall. As a teenager, Denzell held part-time employment, performing the laborious work of separating, breaking down, and organizing pallets for his grandparents' business. Denzell went on to receive his high school diploma from Oscar Smith High School in 2011.

Denzell is a young man, at 23 years old. By all accounts, he is capable, responsible, and integral to his family's stability. He has held employment has an adult, working full-time from 2012 to 2013 as a loader with a screen printing company, until being let go due to a lack of work. At the beginning of this year, he was rehired with the company but, again, laid off due to a lack of work.

Although his father has a significant criminal history, Denzell chose a different way for himself until this recent offense. If he made a mistake, he did the work to make things right. When he was barely 18 years old, he was charged in Chesapeake Juvenile and Domestic Relations Court with the assault and battery of his sister. The offense was taken under advisement for two years on the condition that he complete anger management classes, which he did. Denzell was supervised

for this conduct from August 25, 2011 through February 14, 2012 and saw it through to successful completion.

After smoking marijuana recreationally since around the age of 12, he stopped smoking marijuana on his own, because he wanted to pursue a career as a merchant mariner. Denzell wanted something more out of life for himself and his children. When he was arrested for the instant offense, he had progressed in this endeavor far enough to have obtained a passport and a Transportation Worker Identification Credential (TWIC card).

Denzell's every drug screen since being placed on bond has been negative for illegal substances. As part of his bond condition, Denzell completed a 14-week substance abuse program with The Counseling Center, performing so well that his counselor noted that "he was open and engaged in the treatment program" and "had a positive attitude."

On September 14, 2015, Denzell exercised the worst judgment of his life. He had two beautiful children and a great relationship with their mother, who is his ex-girlfriend. Denzell had taken care to achieve a number of steps required to become a merchant mariner. As a 23-year-old young man, he was making his dreams come true.

But on this day, Denzell was in the company of two men, both related by flesh and blood, who were significantly older than he. Co-defendant Troy Johnson is Denzell's uncle, and is 12 years older than Denzell. Co-defendant Fernando Copeland is also a relative, and is 32 years older than Denzell, which is an age difference of 12 years more than the number of years Denzell has lived on this earth.

Both of these gentleman were too old to be hanging around with a 23 year old. Denzell might have been better off to have friends closer to his own age, but he was trying to be part of a

family. He was trying to create a father in these men. Still, Denzell made a bad choice, but one for which he has taken full responsibility. Denzell had every possibility in front of him, and so much for which to be thankful, and he made a stupid decision that will affect his life, in some way, forever.

There have been some significant setbacks in Denzell's life, when his life could have taken a turn for the worse, particularly given his young age. Instead, Denzell has come back, stronger each time and proven to himself and his family that he is made of something important and enduring. He did not get to have a dad when he was a kid, but it was the love from his mother and other family members that enabled him to become not just a dad but an outstanding dad.

Kayla Johnson and Keyara Johnson are Denzell's younger sisters. Both young women believe in Denzell and have tender memories of their lives with him. Denzell walked Kayla to elementary school, and when she needed something for school, he found a way to make it happen for her. She credits him with being a male figure in her life who taught her not to settle for less than she deserves. Denzell continues to support her as she pursues her nursing career. Keyara remembers struggling with mathematics in high school, but that Denzell tutored her, even after he graduated and had worked all day.

People who meet Denzell become his family. Ms. Nicole Hill met Denzell ten years ago when he was a youth player for the Norfolk Saints and her daughter was a cheerleader. Denzell kept in touch over the years and has become someone Ms. Hill is "proud" to call "son." She does not drive, so Denzell will often drive her around to complete her errands because he does not want her taking the bus. When her daughters need a hand, Denzell shows up for them.

Until the last week of September, Denzell was employed through Allied Research and performed fire watch and traffic control duties with BAE Systems, a defense security and aerospace company. The difficulty with this position was that he was being asked to work in excess of 40 hours a week, every week, which meant he could not see his children as much as he wanted. With the possibility of prison time ahead in a matter of days, he quit so he could spend as much time as possible with his daughter and son ahead of his sentencing. Denzell has applied for a more reasonable 40-hour-a-week position with American Scaffold in Chesapeake and is waiting to hear back.

Four days after his sentencing hearing, Denzell will turn 24 years old. With this felony conviction, he will face his greatest challenges yet. There are numerous collateral consequences to his conduct that will require him to work even harder on himself, and for himself, so that he can best provide for his children. Denzell is extremely intelligent, has the love for his children at the forefront of his thinking, and does not possess a criminal mindset. In fact, he is a model brother, son, grandson, and friend. Denzell is a person you want as your neighbor.

There was a bright light within Denzell that has dimmed as a result of his conduct. He has deep regret for the disappointment he has caused his family and the sobering reality of what it means to have been involved with illegal drugs. When his children grow up, he will have to tell them what he did, with a knot in his throat. His felony conviction will come with a lifetime of wondering how things could have been.

Denzell and the many people who depend on him, particularly his two young children, can benefit from allowing Denzell to remain in his community. He is waiting to hear back any day now regarding the new job that would allow him more time to spend with his children. Denzell plans to refocus his attention, while he works in a lesser-skilled position, to a stable career path. If

possible, under the circumstances, he wants to be a merchant mariner. But if he is unable to do so, Denzell will find another way to rise, because when you have the capacity to care about other people, and to put others' needs before your own, as he does, your bright light comes back.

**The Requested Sentence Reflects the Seriousness of the Offense, Promotes Respect for the Law, Provides Just Punishment, Affords Adequate Deterrence, and Protects the Public**

Mr. Johnson respectfully submits that a sentence of probation is sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to both Mr. Johnson and the public. Mr. Johnson, despite his young age, is fully aware of the consequences of his actions. Beyond the obvious harm that he inflicted on himself, he has caused significant pain for his family. Mr. Johnson is embarrassed and ashamed, for involving himself in the offense. He feels genuine disappointment in himself. Additionally, Mr. Johnson's actions caused him to delay his desire – and potential ability – to become a merchant seaman.

Beyond the direct and immediate consequences of his actions, Mr. Johnson is also subjected to a number of collateral consequences he will face as a convicted felon.[2] Under federal law alone, a felony conviction may render an individual ineligible for public housing, section 8 vouchers, Social Security Act benefits, supplemental nutritional benefits, student loans, certain tax credits, and more. *See United States v. Nesbeth*, No. 15-CR-18 (FB), 2016 WL 3022073, *12-13 (E.D.N.Y. May 24, 2016) (citations omitted). In addition to the general reluctance of private

---

[2] While there is a circuit split as to whether the collateral consequences of conviction can legally be considered as § 3553(a) factors when fashioning a sentence, the Fourth Circuit has clearly held that such considerations are permissible. *See United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (viewing the loss of the defendant's "teaching certificate and his state pension as a result of his conduct" as appropriate sentencing considerations, "consistent with § 3553(a)'s directive that the sentence reflect the need for 'just punishment' and 'adequate deterrence.'"); *Cf. United States v. Nesbeth*, No. 15-CR-18 (FB), 2016 WL 3022073, *17 (E.D.N.Y. May 24, 2016) ("It is difficult to see how a court can properly calibrate a 'just punishment' if it does not consider the collateral effects of a particular sentence.)"

employers to hire ex-offenders, felony convictions disqualify individuals from holding various positions. *Id.* at 13. Inability to procure and maintain employment results in further disastrous consequences, such as losing child custody and going homeless. *Id.* In this way, the statutory and regulatory scheme contributes heavily to many ex-convicts becoming recidivists and restarting the criminal cycle. Thus, "public safety is better served when people with criminal convictions are able to participate as productive members of society by working and paying taxes." *Doe v. United States*, 2015 WL 2452613, No. 14-MC-1412, at *8 (E.D.N.Y. May 21, 2015).

This broad range of collateral consequences serve no useful function other than to further punish people, like Mr. Johnson, after they have completed their court-imposed sentences. *See id.* at *2. As noted above, Mr. Johnson has two young children and is an involved father. Sentencing Mr. Johnson to a period of probation would allow for Mr. Johnson to maintain employment and also increase his chances of finding additional work in order to support his children - family, and in turn, decrease his chances of recidivism.

The serious consequences that result from his conviction cannot be overstated. Compacting these consequences with a period of incarceration or even a lengthy period of supervision would be a severe and an unnecessary punishment.[3] Being branded as a convicted felon compacted with his self-remorse and embarrassment to both himself and his family, is sufficient punishment alone to meet the goals of sentencing. Mr. Johnson desires to improve his life and become a better person and a productive citizen – as he has been the majority of his young

---

[3] *See, e.g., Gall v. United States*, 552 U.S. 38, 48 (2007) (noting that probationers are subject to myriad conditions of probation that significantly impair their freedom. They cannot leave their judicial district, move, or change jobs before notifying and getting permission from their probation officer or the court. They have to report to their probation officers on a regular basis and submit to unannounced home visits. The court can also impose a variety of "special conditions" that make everyday life extremely difficult to navigate); *see also Doe*, 2015 WL 2452613 at *12 (noting the hardships of home confinement. "Trips to church and the grocery store had to be requested two days in advance. All the normal tasks of daily life required advanced planning and approval.").

life. Such a sentence allows for a chance to have a substantial and positive presence in the community.

## **Unwarranted Sentencing Disparity**

The factor of avoiding unwarranted sentencing disparity encourages guideline sentences and thus has the practical effect of improperly elevating this sentencing factor over the other factors of § 3553(a). This factor was one of the driving reasons behind the adoption of the Guidelines. While unwarranted sentencing disparity is a laudable goal, strict adherence to the Guidelines shifts the focus away from the individual defendant being sentenced. Moreover, strict adherence to this particular factor results in the guidelines being *de facto* mandatory.

The defense acknowledges that its request for a probationary sentence is below the guideline range. Despite being a below guidelines sentence, the sentence requested by the defense would not result in significant sentencing disparity. Courts have noted that a departure from guideline sentences does not need to be supported by unusual circumstances, as a pre-Booker departure would; rather all that is necessary is "an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant." *United States v. Castro-Juarez*, 425 F.3d 430, 436 (7th Cir. 2005) (citing *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)).

A sentence within the guideline range is greater than necessary in this particular case. Given Mr. Johnson's young age, personal history and characteristics, his very limited criminal history, no prior incarcerations (excluding the almost four months he served when this case was in state court), his minimal involvement compared to his co-defendants, and that the offense did not involve acts or threatened acts of intimidation or violence, a sentence of probation is more appropriate than a guideline sentence and sufficiently addresses all of the sentencing factors.

## **CONCLUSION**

In short, Mr. Johnson is a young man who fell under the influence of older family members who were involved in marijuana trafficking. He is extremely remorseful and knows he engaged in unlawful conduct. He is embarrassed for having spent time in jail and facing this prosecution. His embarrassment will be compacted by the collateral consequences he will suffer such as being a felon and loss of employment opportunities. For these reasons, and those further advanced above, Mr. Johnson respectfully moves for a sentence of probation, or alternatively, home detention. Such a sentence is sufficient to comply with the factors set forth in 18 U.S.C. § 3553(a). .

        Respectfully submitted,

        DENZELL ALEXANDER JOHNSON

        By      /s/
        Keith Loren Kimball, Esquire
        VSB # 31046
        Supervisory Assistant Federal Public Defender
        Attorney for Denzell Alexander Johnson
        Office of the Federal Public Defender
        150 Boush Street, Suite 403
        Norfolk, Virginia 23510
        Telephone: (757) 457-0870
        Telefax: (757) 457-0880
        Email: keith_kimball@fd.org

# CERTIFICATE OF SERVICE

I certify that on this 6th day of October, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification (NEF) to:

Darryl J. Mitchell, Esquire
Assistant United States Attorney
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Email: Darryl.Mitchell@usdoj.gov

And I hereby certify that I have electronically mailed and mailed the document by U.S. Mail to the following non-filing user:

Kristie Milby
United States Probation Officer
827 Diligence Drive, Suite 210
Newport News, Virginia 23606
Email: Kristie_Milby@vaep.uscourts.gov

                                                              /s/

                                            Keith Loren Kimball
                                            VSB No. 31046
                                            Attorney for Defendant Denzell Alexander Johnson
                                            Supervisory Assistant Federal Public Defender
                                            Office of the Federal Public Defender
                                            150 Boush Street, Suite 403
                                            Norfolk, Virginia 23510
                                            Telephone: 757-457-0870
                                            Telefax:  757-457-0880
                                            Email: keith_kimball@fd.org